## REEVES *v.* DANIEL.

HILL, J. 1. In view of the recitals contained in the contract, and of the former ruling of this court, the following charge was not error: "Now, gentlemen, there is a certain written contract which has been introduced in this case. I charge you, gentlemen, that this is not a wagering contract on its face; that it is a legal contract on its face." *Daniel* v. *Reeves,* 139 *Ga.* 646 (77 S. E. 1067).

2. Nor was the following charge error: "I charge you, gentlemen, that the intention of the parties may differ among themselves; in such cases the meaning placed on the contract by one party and known to be thus understood by the other party shall be held as the true meaning."

3. The refusal to direct a verdict is not cause for a reversal. *Cunningham* v. *Waters,* 142 *Ga.* 115 (82 S. E. 518).

4. Certain evidence of the plaintiff was allowed to go to the jury, over objection, to the effect that the plaintiff had resold the cotton to another person after making the contract with the defendant, and that the plaintiff delivered 50 of the 150 bales so sold to the purchaser; also, the evidence of the person to whom the plaintiff sold, to the same effect. For the reasons given in the case of *Richter* v. *Kilpatrick,* 143 *Ga.* 470 (85 S. E. 319), we think the court erred in admitting this evidence over objection of the defendant. These were but self-serving declarations, made subsequently to the making of the contract, the validity of which could not be established by proof of independent collateral action of one of the parties thereto. *Judgment reversed. All the Justices concur.*
JUNE 23, 1915.

Complaint. Before Judge Daniel. Upson superior court. January 16, 1914.

P. G. Daniel brought suit against T. J. Reeves, alleging substantially the following: On June 19, 1909, petitioner and defendant entered into a written contract by the terms of which Reeves agreed to sell and deliver to Daniel 50 bales of lint-cotton in square merchantable bales at Thomaston, Ga., between the 1st and 30th of October. The cotton was to average 500 pounds per bale, and to be of any grade between strict ordinary and fair inclusive. Daniel was to pay 10.27 cents per pound for Inman, Akers & Inman's 4s, the grade being good middling, American Standard classification, with deductions and additions for other grades according to Inman, Akers & Inman's differences in effect on the day of delivery. The 50 bales of cotton, averaging 500 pounds per bale, would weigh in the aggregate 25,000 pounds, and at the price agreed on in the contract would amount to $2,567.50. On the 30th day of October, 1909, in the city of Thomaston, Ga., Daniel tendered to Reeves, the defendant, $2,567.50 for the 50 bales of cotton at the contract price, and stood ready to comply with the terms of the contract, and then and there demanded the 50 bales of cotton of the defendant. The cotton of the classification referred to in the contract was worth and bringing on the market on October 30, 1909, 14-5/8 cents per pound, and the difference between that and the contract price on the 50 bales amounts to $1,088.75. Reeves failed and refused to deliver the cotton as demanded, whereby he breached the contract and became indebted to and has injured petitioner in the sum last stated, with interest at 8 per cent. from October 30, 1909, for which petitioner prays judgment. It was further alleged, that under the contract the defendant sold to the petitioner 50 bales of cotton to be raised by himself on his lands; that the defendant was a farmer and planted and raised cotton, and it was understood at the time of making the contract that the 50 bales of cotton were to be raised on his own lands and were to be delivered, but, in the event the defendant should fail for any cause to deliver the same, he had the right to settle the contract by paying any difference in the value of the cotton when delivered and the price agreed on in money; that such was the understanding at the time, and the contract was made in good faith to secure the delivery of the cotton, and not for speculative or gambling purposes. Plaintiff amended

his petition by alleging, in effect, that it was the intention of the parties to the contract that the cotton so agreed to be sold was to be actually delivered by Reeves; that the plaintiff had sold cotton to other parties, including manufacturing companies, to whom it was to be actually delivered for manufacturing purposes, and at the time of making the contract in question the plaintiff was buying this and other cotton to meet his own contracts for the sale of cotton which was actually to be delivered; and in making contracts for the purchase of cotton, as in the present instance, it was his intention to secure the actual delivery of the cotton, and such was likewise the intention of the defendant; that Reeves represented, and it is a fact, that he was a farmer and raised cotton, and that the 50 bales then agreed to be sold and delivered would be raised on his own farm, and it was the intention of the defendant to deliver cotton actually raised by himself; that it was agreed and understood that if Reeves should fail, for any reason, to actually deliver the cotton as contemplated and intended by the parties at the time it should be delivered, then the parties could settle the difference between them arising from this breach of the contract.

The contract was as follows: "June 19, 1909. I hereby agree to sell to P. G. Daniel 50 bales of cotton delivered at Thomaston between the first and 30th days of October next. The delivery to be made at such time, at seller's option, in lots of not less than fifty bales. Cotton to average 500 pounds per bale. If cotton does not average 500 pounds per bale, I will deliver a sufficient number of bales to bring up the average to 500 pounds per bale. The cotton to be of any grade between strict ordinary and fair, inclusive, at the price of 10.27/100 cents per pound for Inman, Akers & Inman 4s, said grade being good middling, American Standard classification, with deduction and addition for other grades according to Inman, Akers & Inman's differences in effect on the day of delivery. It is fully understood and expressly agreed by the parties to this contract that same can be settled by payment of money upon failure to delivery of the actual cotton in square mercantile bales weighing an average of 500 pounds, as aforesaid. [Signed] T. J. Reeves. We accept the above contract, with its conditions and obligations. [Signed] P. G. Daniel."

The defendant denied the material allegations of the petition, and, answering specially, denied making or entering into the al-

leged contract in manner and form sued on, and averred that he did not authorize any one to do so for him, and has never ratified any such contract. He says that the terms and agreements of the alleged contract set forth are not full, true, and correct, and are not the agreements of any contract ever made and entered into with the plaintiff. The jury returned a verdict for the plaintiff. A motion for a new trial was overruled, and the defendant excepted.

*J. Y. Allen* and *M. H. Sandwich,* for plaintiff in error.

*W. Y. Allen* and *R. L. Berner,* contra.