## THRONATEESKA PECAN CO. et al. v. MATTHEWS et al.

(Circuit Court of Appeals, Fifth Circuit. December 15, 1921.)

No. 3679.

1. Courts ⟜323—Averments of jurisdictional facts in bill taken as true prima facie.

Where a bill alleges the requisite citizenship to give a federal court jurisdiction, the duty of pleading and burden of proof is on the defendant, and unless the answer or plea denies such allegations, they need not be proved, but are prima facie true.

2. Mortgages ⟜401(2)—Matured interest constitutes principal "debt" for nonpayment of which foreclosure is authorized.

In a mortgage authorizing foreclosure "on default of payment of said debt" continuing for 60 days, "debt" may be construed as embracing a matured installment of interest, which then becomes a part of the principal debt.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

3. Mortgages ⟜401(2)—Construction placed on ambiguous provision by parties will be adopted by court.

Where a mortgage is not clear as to the right to accelerate maturity of the principal debt, because of default in payment of interest, the construction placed upon it by the parties will be adopted by the court.

4. Mortgages ⟜401(2)—Right to accelerate maturity of principal debt for nonpayment of interest inures to assignee.

The right given to a mortgagee to accelerate maturity of the principal debt for default in payment of interest is not personal to him, but inures to the benefit of his assignee.

5. Mortgages ⟜401(4)—Foreclosure suit sufficient acceleration.

A foreclosure suit by mortgagee is sufficient exercise of option for acceleration on default in payment of interest.

6. Mortgages ⟜235—Power of attorney, though not under seal, held to authorize indorsement of notes and transfer of mortgage secured thereby.

A power of attorney, though not under seal, held sufficient to authorize indorsement of notes and transfer of a mortgage, which would follow as a legal consequence of the indorsement and transfer of the notes secured under Code Ga. 1910, § 4276.

Appeal from the District Court of the United States for the Southern District of Georgia; Beverly D. Evans, Judge.

Suit in equity by J. P. Matthews and others against the Thronateeska Pecan Company and another. Decree for complainants, and defendants appeal. Affirmed.

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

D. H. Redfearn, of Albany, Ga., Arthur G. Powell, of Atlanta, Ga., R. J. Bacon, of Baconton, Ga., and Sam S. Bennet, of Albany, Ga., for appellants.

J. R. Pottle, I. J. Hofmayer, and H. A. Peacock, all of Albany, Ga., for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. On June 12, 1917, Thronateeska Pecan Company, a corporation created under the laws of Georgia, executed to C. M. Barnwell four notes, aggregating $121,540 principal, secured by a mortgage of even date covering a tract of land of about 700 acres, known as the Barnwell pecan groves, situated in Mitchell county, Ga. The first two of these notes were paid. The last two, to wit, one for $35,000, due June 12, 1920, and one for $75,000, due June 12, 1922, remain unpaid. Interest on these last two notes at the rate of 7 per cent. per annum is payable quarterly on the 1st days of July, October, January, and April of each year after date. On July 1, 1919, a default was made in the payment of the quarterly installment of interest then due, amounting to $1,950. The mortgage contained a provision that the mortgagor, its successors and assigns should have the right at any time or times to anticipate the payment, before maturity of any or all of said notes, upon payment to the mortgagee of 60 days' interest in advance, and also provided:

"Upon default of payment of said debt according to the terms hereof after said (debt) default has continued for 60 days, then the Thronateeska Pecan Company hereby authorizes and empowers said C. M. Barnwell to foreclose this mortgage, in his discretion, in the usual form, or to sell the same, or so much thereof as may be necessary to pay said debt and also expenses of sale at public outcry, for cash, on any lawful sale day for sheriff sales at the time and place of sheriff's sales of like property under mortgage executions from the superior courts of the state of Georgia, first giving notice of such sale and the time, terms and place thereof, in the public gazette in which sheriff's sales for the county where such sale is to be made are advertised, and as often and for such period as is required for such sheriff's sales, and from the proceeds of such sale or sales to pay said debt, with interest due thereon and expenses of said sale or sales, including 10 per cent. attorney's fees, and account to said Thronateeska Pecan Company for the surplus, if any."

On said June 12, 1917, the Thronateeska Pecan Company also executed a deed of trust, subject to said mortgage above described, to the Georgia Trust & Savings Company, now Georgia Bank & Trust Company, as trustee, to secure an issue of $240,000 second mortgage bonds. These bonds were issued and delivered to various persons as bondholders. The deed of trust provided that a default in the payment of interest on said bonds for 90 days would mature the entire debt due thereon.

On September 14, 1917, the Thronateeska Pecan Company conveyed said Barnwell pecan groves to the Barnwell Pecan Company, subject to said mortgage and deed of trust. Upon default in payment of interest on the notes secured by the Barnwell mortgage on July 1, 1919, they were placed in the hands of E. E. Cox, an attorney, for collection. Negotiations were had between said Cox and the manager of the Barn-

well Pecan Company and others representing said companies by which it was understood and agreed that the said Barnwell should declare a default after the expiration of 60 days from July 1, 1919, and declare the entire indebtedness due; it being made to clearly appear in the testimony in said case that the mortgagor and mortgagee understood such default of interest for 60 days in any payment of interest entitled the mortgagee to declare the principal of said debt due. It appears from the pleadings and evidence in the case that a large portion of the second mortgage bonds were held by the Bank of Columbia, a banking corporation in the state of South Carolina, to secure an indebtedness existing between said bank and said Thronateeska Company, and that said company desired the foreclosure of said Barnwell mortgage as a means of procuring a litigation in the state of Georgia in which the Bank of Columbia, as largely interested in said second mortgage bonds and deed of trust, might become a party defendant, so that an accounting might be had between them in the courts in Georgia.

Said Cox thereupon, after the happening of said default for 60 days, as attorney for Barnwell, declared said entire debt, principal and interest, due on said notes and brought suit thereon on September 18, 1919, in the city court of Albany, Ga., the residence of said Thronateeska Company. The holders of said second mortgage bonds, becoming aware of said suit, requested one J. P. Matthews to purchase the notes and mortgage owned by said Barnwell, and on October 7, 1919, Barnwell acting by and through his attorney in fact, Charles M. Barnwell, Jr., transferred, without recourse, the two notes above described, together with the mortgage securing the same, to said Matthews. Matthews does not appear to have become a party to said suit in said city court of Albany, but undertook to exercise the power of sale contained in said mortgage by advertising the property for sale before the courthouse door of Mitchell county, Ga.

Said sale was restrained by legal proceedings instituted by the two pecan companies, but on December 6, 1919, an agreement was entered into between counsel for Matthews and for the pecan companies, in which it was expressly agreed that Matthews should proceed to advertise the property for sale under said power of sale for the first Tuesday in January, 1920.

Said sale was delayed by litigation, which was removed into the United States District Court for the Southern District of Georgia, and on April 22, 1920, J. P. Matthews, as the owner of said mortgage and notes, transferred to him by said Barnwell, together with a large number of persons, the holders of said second mortgage bonds of said Thronateeska Company, filed a bill in said United States District Court, seeking to foreclose said first mortgage and said deed of trust, praying the appointment of a receiver to hold said property pendente lite, also seeking the removal of the Georgia Bank & Trust Company as trustee under said deed of trust, and for further relief.

On the hearing for injunction and receiver, the court entertained jurisdiction for the purpose of foreclosing said first mortgage assigned to said Matthews and appointed a receiver. It held that the Georgia Bank & Trust Company should not be removed as trustee, and that

said bondholders were not, under the evidence then submitted, entitled to foreclose said deed of trust.

The said Georgia Bank & Trust Company thereafter was permitted to file an intervention in said cause, in which it prayed the foreclosure of said deed of trust. The defendant pecan companies defended said litigation on several grounds.

The court below, after hearing the evidence in said case, held that under the provisions of the first mortgage and notes secured thereby, and the conduct of the parties, the said principal could be accelerated for default in payment of interest for as much as 60 days, and that the same had been accelerated by Barnwell by the filing of the suit in the city court of Albany, and that the same had been fully recognized and acted upon by both complainants and the defendant pecan companies. He ascertained the amount due on said first mortgage, and decreed a foreclosure and sale to satisfy the same. He also ascertained the amount due upon the bonds secured by said deed of trust, and directed that after payment of the first mortgage they should be satisfied, and that said deed of trust be foreclosed.

The questions raised on this appeal are:

First. That the pleadings and evidence did not show that C. M. Barnwell was not a citizen of Georgia at the time when said suit was filed, and therefore Matthews as his assignee is not entitled to maintain the same.

Second. That no right to accelerate the principal existed under the mortgage and notes so held by said Matthews; that no principal sum was due at the time the bill was filed, and therefore the amount in controversy, exclusive of interest and costs, necessary to give this court jurisdiction, did not exist.

Third. That, if the right to declare said principal due existed, it was personal to C. M. Barnwell, Sr., and that maturity of the principal could not be accelerated by Matthews as assignee.

Fourth. That the transfer of the mortgage in question was the transfer of a sealed instrument; that the power of attorney executed by Barnwell to his nephew was not under seal, and therefore did not confer power to execute a transfer, and the notes secured by said mortgage were also under seal, and that the power of attorney did not authorize the indorsement thereof by said attorney.

Fifth. That, as the bill filed by J. P. Matthews to foreclose the first mortgage should not have been sustained, the intervention of the Georgia Bank & Trust Company should of necessity have been dismissed, and no foreclosure of said deed of trust decreed.

[1] The first question raised is as to the averments of the citizenship of C. M. Barnwell, Sr., at the time of the filing of this suit by Matthews in the District Court. The court below considered the question as though raised by the pleadings, and held that under the evidence Barnwell possessed the citizenship which would have sustained a suit by him in said court. There was abundant evidence to sustain this ruling, and this court agrees with the finding of the court below on this question.

But it is claimed that the pleadings do not aver Barnwell's citizenship, and that this was essential. On appellees' motion an amendment of the bill was allowed to be filed in this court, as permitted by Act March 3, 1915 (38 Stat. 956; U. S. Comp. St. § 1251c), asserting his citizenship, with leave to the appellants to file an answer positively verified on this subject. An amendment, averring Barnwell to be a citizen of South Carolina at the time of the transfer of said notes and mortgage, and of the filing of said bill, was filed, and an answer has been presented, stating that appellants cannot verify the same positively.

Permitting this answer to stand, and taking its averments for what they state, they do not deny the essential averment of the amendment. They aver the belief of appellants that at the time the assignor, Barnwell, executed the power of attorney, under which his nephew made the transfer, he was not a citizen and resident of South Carolina, but was a citizen and resident of Georgia. His residence at that time (February 14, 1919) is wholly immaterial. It is positively averred in the amendment that he was a citizen and resident of South Carolina on April 22, 1920, when this suit was filed. As to this, the only averment of the answer is:

"Appellants are unwilling to admit that he has since [date of power of attorney] legally moved his residence prior to the time of the filing of said suit."

This does not deny the positive averments of citizenship of the amendment, even on information and belief; it only expresses unwillingness to admit them. Where the answer or plea does not deny the averments of citizenship of the bill, they need not be proven, but are prima facie true. Where the bill alleges the requisite citizenship, the duty of pleading and burden of proof is on the defendant. Sheppard et al. v. Graves, 14 How. 505, 510, 14 L. Ed. 518; Livingston v. Story, 11 Pet. 351, 393, 9 L. Ed. 746; Hartog v. Memory, 116 U. S. 588, 590, 6 Sup. Ct. 521, 29 L. Ed. 725; Simkins, Fed. Suit in Eq. (2d Ed.) 121, 125, 126. On the whole record, we think it is sufficiently alleged and proved that the assignor was a citizen of South Carolina when the suit was brought.

[2] We think the court was correct in holding that the mortgage gives to the mortgagee the right to accelerate the maturity of the principal for a default for 60 days in payment of the interest on the dates when contracted to be paid. The court below held that the mortgage was ambiguous, and under the evidence of the conduct of the parties construed the provisions thereof to provide for an acceleration of the entire debt on default of the interest.

Where interest is payable at a fixed date, and is not paid, it becomes due and collectible, and itself bears interest. It becomes in fact a principal debt, for which suit can be brought, and to collect which a foreclosure of a mortgage given to secure the obligation can be had. Cumberland Island Co. et al. v. Bunkley, 108 Ga. 756, 33 S. E. 183; Ray v. Pease, 97 Ga. 618, 25 S. E. 360; Calhoun et al. v. Marshall, 61 Ga. 275, 34 Am. Rep. 99; City of Lexington v. Butler, 14 Wall. 282, 297, 20 L. Ed. 809; Edwards v. Bates County, 163 U. S. 269, 272,

16 Sup. Ct. 967, 41 L. Ed. 155. Hence it is permissible to construe the word "debt" as embracing such overdue installment of interest. Park, Treas'r, v. Candler, Governor, 114 Ga. 466, 40 S. E. 523; Neal, Ex'r, v. Reams, Adm'r, 88 Ga. 298, 14 S. E. 617.

The first provision of this agreement as to the effect of a default is that, if it lasts for 60 days, the mortgagee may proceed to foreclose, with an alternative that he may sell, as at a sheriff's sale, without legal proceedings. It is quite evident that one purpose of this stipulation was to agree to a foreclosure for the entire debt by legal proceedings, after 60 days' default.

Had the stipulation contemplated that the entire debt must be then due, the stipulation would have deferred the right, then existing under the law, to proceed immediately on the default in payment of the entire debt at maturity, which is hardly probable. The stipulation also immediately follows one giving to the mortgagor the right to anticipate the maturity of the debt and to discharge it before maturity. It is therefore most likely that the succeeding stipulation was providing for an acceleration of the maturity of the debt on a default of 60 days in the payment of interest.

[3] The contract, evidenced by the notes and mortgage securing the same, were made in Georgia and to be performed in Georgia. Code of Georgia 1910, § 4267, provides that, even when the intention of the parties may differ, "the meaning placed on a contract by one party, and known to be thus understood by the other party, at the time, shall be held as the true meaning." While this section will not permit the court to receive evidence of intention to defeat a contract entirely unambiguous, where the meaning is in no way doubtful, yet it plainly allows proof of the understanding of the parties, as placed thereon by one party with the knowledge and apparent acquiescence of the other party, to be received and to determine the meaning of the contract. Reeves v. Daniel, 143 Ga. 569, 85 S. E. 756.

The rule is also well settled that, where the contract is doubtful or ambiguous, "the interpretation given by the parties themselves to the contract will be adopted by the court." 1 Williston on Contracts, § 623, and notes; Barber Asphalt Co. v. City of St. Paul, 224 Fed. 842, 846, 138 C. C. A. 558. Here there is no doubt, not only as to the meaning placed on this stipulation by Barnwell and acquiesced in by the two pecan companies, but action on this construction was procured by these defendant companies to be taken by Barnwell, and an acceleration of the principal of the entire debt declared, and a suit procured to be brought thereon. Because of this conduct and suit, Matthews was induced to purchase from Barnwell this first mortgage debt, which had been thus declared due at the solicitation of the mortgage debtor.

[4] We also think that the acceleration was made by Barnwell, and that it was recognized by the defendant companies in the agreement made with Matthews on December 6, 1919. We do not think that these defendant companies can be permitted now to deny that the entire indebtedness was properly declared to be due. We also think that Matthews, as transferee, had the same right to accelerate the maturity of the debt. Pomeroy, Eq. Jur. (2d Ed.) §§ 1209, 1210. His

foreclosure suit was a sufficient acceleration. Harris v. Powers, 129 Ga. 75 (6), 58 S. E. 1038, 12 Ann. Cas. 475.

[5] That the power of attorney executed by the mortgagee Barnwell to his nephew, whether under seal or not, was sufficient to authorize the indorsement of the notes to Matthews and a transfer of the mortgage, which would in fact have resulted from a transfer of the notes, is quite clear under the authorities, including the decisions of the Supreme Court of Georgia. Pomeroy, Eq. Jur. (2d Ed.) § 1209; Code of Georgia (1910) § 4276; Berry v. Van Hise, 148 Ga. 27, 95 S. E. 690.

We find no error in the decree rendered by the District Court, and it is affirmed.