## WHITE & HAMILTON LUMBER CO. *v.* FOSTER.

1. An accident, as that term is used in § 4567 of the Civil Code, is any unforeseen occurrence not the result of negligence or misconduct on the part of the party seeking relief in relation to a contract, which was not anticipated by the parties when the same was entered into, and which gives an undue advantage to one of them over the other; and equity will relieve from a mistake of fact material to the contract, where the party complaining applies within a reasonable time, where there has been misrepresentations or other fraudulent acts. Where the scrivener who draws a contract has made a mistake, the contract will be relieved; and where by accident or mistake the form of the conveyance is contrary to the intention of the parties in their contract, equity will interfere to make it conform thereto. While ignorance of the law will not excuse, equity will relieve from mistakes as to the legal effect of words used in an instrument; and where there is a difference between the legal effect produced by the words and the effect intended to be produced, the true intention shall prevail. Especially is this true where one of the parties to the contract is mistaken and the other knows that he is.
2. To misrepresent material facts for one's own benefit and to the injury of the opposite party when there is an obligation to speak the truth is fraud.

No. 3748. FEBRUARY 14, 1924.

Complaint. Before Judge Shurley. Taliaferro superior court. April 28, 1923.

*Alvin G. Golucke* and *Hawes Cloud,* for plaintiff in error.

*J. A. Beazley, R. W. Moore,* and *Strozier & Deaver,* contra.

RUSSELL, C. J.　Foster sued White and Hamilton for $1200, the alleged purchase-price of 300,000 feet of timber and $100 for one hundred cords of ash timber at $1 per cord. His action was based upon a contract attached to the petition. In this contract it was agreed "that if, at the expiration of the period over which this contract extends, there is left standing on said land any pine or poplar timber of the dimensions hereinabove set out [6x6 in.], the party of the second part is to pay the party of the first part for said timber at the contract rate as hereinabove set forth." A previous provision of the contract stipulated that "the party of the second part agrees to manufacture all the lumber from said timber that would ordinarily be considered possible." The defendants, in answering the petition and asking damages in the sum of $2000, invoked a reformation of the contract. The defendants also pleaded that they were induced to enter the contract by fraud on the part of the plaintiff. The plaintiff made an oral motion to strike the

answer of the defendants, who thereupon offered an amendment to their answer, which was allowed by the court subject to demurrer or the pending motion to strike. At a subsequent term of the court the case was taken up for trial, and the court sustained the plaintiff's motion and struck both the amendment and the answer. To this judgment the defendants filed exceptions pendente lite. The case proceeded to trial, and resulted in a verdict for the plaintiff in the sum of $700. The defendants filed a motion for a new trial, based only on the general grounds and one special ground complaining of the refusal of the court to permit certain oral testimony with relation to the meaning of the contract.

If the court was right in ruling upon the answer of the defendants as amended, there was no error in refusing a new trial, for the verdict in favor of the plaintiff is supported by evidence, and the ruling upon the admissibility of the testimony which was refused could not have been otherwise than was held by the trial judge; and so the two questions presented by the exceptions pendente lite control this case. To sustain and support the plea for $2000 damages the defendants invoked the intervention of equity, and asked that the contract be reformed. They also averred that their agreement to the contract was obtained and induced by fraudulent misrepresentations of the plaintiff. From a consideration of the record it does not appear that the two branches of the answer are so interlocked that the defendants are compelled to rely upon both of them. If the contract should have been reformed as prayed by the defendants, and the amendment upon that subject had been supported by proof satisfactory to the jury, a verdict in favor of the defendants would have been authorized, even though the plea of fraud in procurement might not have been sustained. On the other hand, if the amendment alleging fraud had not been stricken, even though the allegations as to mistake of the parties or of the scrivener were not sufficient to have authorized a reformation, or, even if the contract had been reformed, the evidence should not have authorized a recovery by the defendants of the damages claimed by them, they still would have been enabled to prevent any recovery on the part of the plaintiff, by satisfying the jury that they had fully complied with the contract as really made between the parties,—the contract really understood and agreed to. As presented by the exceptions pendente lite, the ruling of the judge

in striking the answer and the amendment upon oral motion was a holding that the facts stated in the pleadings of the defendants were insufficient either to authorize a reformation of the contract in the particulars pointed out by the defendants or to set aside the contract on the ground of fraud; for if the answer of the defendants upon either proposition was sufficient to withstand a general demurrer, it would have been error to strike the answer as a whole. Two questions are presented. First: Do the allegations of the answer, assumed to be true, call for reformation? Second: Regardless of the question of reformation, do the facts (which for purposes of demurrer are uncontradicted) evidence that the defendants would not have entered the contract but for the misrepresentations of the plaintiff? The two questions are entirely independent of each other, and we shall first consider the merits of the plea for reformation, though the entire answer should not have been struck, even if the case was not one for reformation, if the facts related show such fraud as nullified the contract as written.

In the seventh paragraph of the defendants' answer the defendants say: "It was provided in said verbal agreement between the plaintiff and defendants that White & Hamilton Lumber Co. should by all the terms and provisions of said agreement be required to manufacture into lumber only so much of the timber on said tract of land described as could be reasonably expected of one operating under such conditions as might exist in the locality of said timber during the life of said agreement, and that White & Hamilton Lumber Co. should not be required to pay for any timber left standing which could not under such existing conditions be manufactured into lumber by them." This paragraph is pleaded to reform the following language in the original contract: "The said party of the second part agrees to manufacture all the lumber from said timber that would ordinarily be considered possible." The defendants were pleading that they had cut into lumber all the timber embraced in the contract. The plaintiff in the petition was contending that he had sold the defendants all the timber on a certain described tract of land in Houston County which would square 6 inches by 6 inches, that the defendants were liable to him for the value of such timber whether they manufactured it into lumber or not, that the defendants had left 300,000

feet of lumber uncut after having agreed that he should receive $4 per thousand feet for his timber, and thereby had breached the contract in not manufacturing "all the lumber from said timber that would ordinarily be considered possible." The eighth paragraph of the answer, as ground for reformation of the contract, set up that "When said verbal agreement was undertaken to be reduced to writing by the attorney for the plaintiff, said provision set out in par. 7 of this answer was omitted from said written contract either by the mistake of both parties or the fraud of the plaintiff, unmixed with any negligence on the part of the defendants." In the amendment this was amplified as follows:

"Eight A. The precise terms of the contract had been orally agreed upon by the plaintiff and the defendant W. T. Hamilton, and were well understood by both parties. This oral contract included all the terms and provisions set forth and contained in par. 7 of this answer. When the plaintiff and the defendant W. T. Hamilton went to the offices of plaintiff's attorney, there to have the oral contract so made and as made reduced to writing, and there to sign the written contract, it was the purpose of both parties to have the full contract, made orally, set out in the written contract to be signed by them, and to include in said writing all the terms and provisions of said oral contract as set forth in par. 7 of this answer.

"Eight B. The plaintiff and the defendant W. T. Hamilton, in the office of ——————, plaintiff's attorney, together explained, in the presence and within the hearing of each other, to said attorney all the terms of the contract orally made, which said oral contract they desired reduced to written and legal form. The defendants being especially interested in those terms and provisions of the contract as are set forth and contained in par. 7 of this answer, the defendant W. T. Hamilton, in the presence and within the hearing of the plaintiff, explained to the plaintiff's said attorney that the land on which the said trees stood was now covered with water, but that the plaintiff had represented that all said water dried up and the land got hard enough to haul over it in the summer time, and for these reasons and as a guarantee of ordinary logging conditions the plaintiff and defendant had agreed that a provision should be included in said written contract by which defendants should be required to manufacture into lumber

only so much of the timber on said tract of land described as could be reasonably expected of one operating sawmills and logging them and hauling the lumber from the land under such conditions of the soil (with reference to its firmness or softness, and its resulting ability or inability to sustain the logging and hauling of the logs and lumber from said described lands), as might exist in the locality of said timber during the life of said agreement, and as the same might be affected by the seasons of the year, and that defendants should not be required to pay for any timber which could not under such existing conditions be manufactured into lumber by them.

"Eight C. After obtaining from plaintiff and defendant W. T. Hamilton all the terms and provisions of said oral contract as hereinbefore set forth, plaintiff's said attorney then undertook to reduce said oral contract to writing and legal form, and as the result of his said undertaking plaintiff's said attorney presented a writing of approximately 1200 words, covering four sheets of paper, typewritten, and then read same to plaintiff and defendant W. T. Hamilton. When said attorney reached page two of said writing in his said reading of the same to plaintiff and defendant W. T. Hamilton, and after reading the following paragraph from said writing, to wit: 'The party of the second part agrees to manufacture all the lumber from said timber that would ordinarily be considered possible,' said attorney in the presence of said plaintiff spoke substantially as follows, to wit: 'That is your paragraph, Mr. Hamilton. It covers the provisions you stated' (as set forth and contained in par. 7 of this answer). 'It is broad enough to take care of your provision about requiring you to cut only what you might cut under ordinary logging conditions. If Mr. Foster is correct, and the land dries up so you can get the logs and lumber from it under ordinary logging conditions, then you are bound to cut all of it, or pay for what you leave. I have expressed this in that paragraph, and the reverse of the proposition is implied. If Mr. Foster is mistaken, and the lands do not dry up so you can get the logs and lumber from them by ordinary logging, then you are required under this paragraph to do only what ordinarily would be expected of one operating under such conditions as might exist, and you would not have to pay for what you could not get by ordinary logging. This paragraph, in fact, guarantees you or-

32

dinary logging conditions, and covers absolutely the provision you explained' (as set forth in par. 7 of this answer) 'to me.'

"Eight D.   These defendants show that the sentence and paragraph in said contract as follows, to wit:   'The party of the second part agrees to manufacture all the lumber from said timber that would ordinarily be considered possible,' is seemingly ambiguous, and is apparently susceptible of either one of the two following interpretations, to wit:   (1st)   The party of the second part agrees to manufacture all the lumber from said timber land that would ordinarily be considered possible to manufacture therefrom, under the conditions surrounding the process of manufacture at the time of manufacture, that is, under the conditions of wetness or dryness of the soil, as the same might affect the logging of the sawmills, and the hauling of the lumber from the timber lands described.   (2nd)   The party of the second part agrees to manufacture all the lumber from said timber logs that would ordinarily be considered possible, that is, that the party of the second part agrees to be as saving with each log as possible, and to saw as many board feet of plank out of each log cut as would ordinarily be considered possible, and would waste nothing from any log.

"Eight E.   Defendants show that they had no reason whatever to doubt the statements of said attorney for the plaintiff as to the meaning of the language used in said written contract so prepared by him, and the legal effect of said language, as both were explained by said attorney as hereinbefore set forth, especially in view of the fact that the paragraph from the written contract quoted in par. 8 D of this answer is apparently entitled to the first interpretation therein given it, and said attorney had stated that the reverse of the proposition was implied as a matter of legal construction; and defendants believed that the language quoted from said written contract in par. 8 C of this answer, as the same was explained to them is in said paragraph set forth, in its legal effect embodied substantially those provisions of the oral contract as are set forth in par. 7 of this answer; and so believing, defendants signed said contract.

"Eight F.   Defendants show that at the time of reducing the said contract to writing, and at the time of its execution, the plaintiff was represented by an attorney learned and skilled in the law, and for whose statements and acts the plaintiff is responsible,

and these defendants were represented only by the defendant W. T. Hamilton, who was and is unlearned in the law, and ignorant of the rules of construction of contracts, and these facts herein set forth constituted an inequality of the parties in reducing said contract to writing.

"Eight G. Defendants show that at the time they signed said written contract they believed, from all the facts and circumstances hereinbefore set forth in this answer, that the provisions of the oral contract set forth in par. 7 of this answer were in their legal effect substantially embodied in said written contract.

"Eight H. Defendants show that by all the facts and circumstances hereinbefore set forth that they were not guilty of failing to exercise reasonable diligence, or of any negligence whatever, under all the facts and circumstances surrounding the making and writing and signing of said contract as are hereinbefore set forth, to obtain knowledge of the contents of said written contract, and the legal import of the language therein used.

"Eight I. Said written contract fails to be, as it was intended, an execution of the previous oral contract between the parties, and it so fails by reason of the omission therefrom of said par. 7 of this answer; and for said written contract to embody all the terms and provisions of said oral contract, and to be an execution of said previous oral contract, it is necessary to add to said written contract the provisions set forth and contained in par. 7 of this answer.

"Eight J. In the manner above described, and by the person named, and under the circumstances detailed, said provision set out in par. 7 of this answer was omitted from said written contract."

It will thus be seen that while the plaintiff in the lower court contended that the contract was plain and unambiguous and to allow the amendment would make too vague and indefinite for enforcement an agreement fully understood and executed, the defendants contended that the ambiguity was so clear as to permit and require a reformation, even if the defendants were not correct in their position that the contract meant a totally different thing from the construction of the plaintiff. The Code of Georgia provides that "If the form of conveyance is, by accident or mistake, contrary to the intention of the parties in their contract, equity

will interfere to make it conform thereto." Civil Code, § 4567. "Accident" is defined as follows: "An accident relievable in equity is such an occurrence, not the result of negligence or misconduct of the party seeking relief in relation to a contract, as was not anticipated by the parties when the same was entered into, and which gives an undue advantage to one of them over another in a court of law." Civil Code, § 4565. "Mistake," as that word is used in § 4567, may be either of law or of fact. Civil Code, § 4574. "An honest mistake of the law as to the effect of an instrument on the part of both contracting parties, when such mistake operates as a gross injustice to one, and gives an unconscientious advantage to the other, may be relieved in equity." Civil Code, § 4576. "In all cases of mistake of fact material to the contract, or other matter affected by it, if the party complaining applies within a reasonable time, equity will relieve." Civil Code, § 4580. "A mistake of law in the draftsman, or other agent, by which the contract, as executed [written], does not fulfill or violates the manifest intention of the parties to the agreement, is relievable in equity." Civil Code, § 4577. While as a general rule equity is slow and cautious in the exercise of its power of reformation, the foregoing code sections leave no doubt that the right of reformation in a proper case exists. Equity will not interfere where a party by reasonable diligence could have had knowledge of the truth, nor will ignorance of a fact known to the opposite party generally justify its interference. But if ignorance of a fact material to be known is due to misrepresentation or other fraudulent acts of the opposite party, the remedy is available. Civil Code, § 4581. And in ascertaining the intention of the parties at the time they entered the contract, with a view to ascertaining whether there was such a mistake of fact as comes within the provisions of § 4581, the well-settled rule of law that where there is a difference between the parties as to the intention of the contract, "the meaning placed on the contract by one party, and known to be thus understood by the other party, at the time, shall be held as the true meaning" (Civil Code, § 4267), must be borne in mind.

According to the answer in this case, it was well understood and agreed between the parties that only such timber as could be hauled and logged consistently with the nature of the soil and its

suitableness for the logging and hauling of timber in the ordinary manner in sawmilling was to be cut and manufactured. This was plainly stated to the attorney who drew the contract in behalf of the plaintiff, and the discussion of the question was in the presence of the plaintiff. When the contract was read over, Hamilton, the defendant who represented the partnership, objected to the language used, and restated the agreement which placed a limitation upon the amount of timber to be manufactured, dependent upon the location of the timber and the feasibility of logging and transporting it to the mill; and he was told by the plaintiff's attorney that the language employed in the contract was inserted for the special benefit of the defendants, and that the language employed meant exactly what the defendants wanted and had asked for. No matter what may be the real truth as developed upon a trial, upon the hearing of the motion to strike this was the uncontradicted truth of the case, and we think the allegations were sufficient to withstand a general demurrer and to entitle the defendants to go to the jury and see if they could establish by evidence the allegations of their answer upon this branch of the case. The omission of which the defendants complain, as stated in their answer, was due to both accident and mistake, according to the code definition of those words as just quoted. There is nothing in the statements of the answer that suggests any intimation of misconduct on the part of the defendants, and the omission was not contemplated by the parties when the contract was entered into, and gave the plaintiff an undue advantage over the defendants in any court of law were the contract not reformed. If it be said that the parties were trading at arm's length and that for that reason the defendants could not rely upon any statement made by the attorney for the plaintiff, still why should not the defendants have relied upon the attorney for the plaintiff, alleged to be a learned and able lawyer; and even though that lawyer's construction of the contract as written might have been honestly erroneous, would it not be such a misrepresentation of a fact, if the law really were to the contrary, as that equity will relieve where the "party complaining applies within a reasonable time"? The attorney no doubt honestly thought that the language he used was sufficient to exclude from the contract, and relieve the defendants from liability for, all timber where on account of the nature of the soil

it could not be logged and conveyed by ordinary methods to the sawmill; and yet the words used do not plainly convey any such meaning. Where the scrivener has made a mistake the contract will be reformed. *Ham* v. *Parkerson,* 68 *Ga.* 830. "If one of the parties to a contract is mistaken in a matter, and the others know that he is, and do not apprise him of it, yet the mistake, though not one on their part, is the subject of correction. The case becomes one in which there is a *mistake* in one of parties to the contract, and a *fraud* in the others." *Wyche* v. *Greene,* 26 *Ga.* 415, 422. See also *Gabbett* v. *Hinman,* 137 *Ga.* 143 (72 S. E. 924), and cases cited; *Shelton* v. *Ellis,* 70 *Ga.* 297; *Jackson* v. *McCalla,* 133 *Ga.* 749 (66 S. E. 918); *Kight* v. *Gaskin,* 139 *Ga.* 379 (77 S. E. 390), and cases cited. Certainly the plaintiff, who, according to the allegations of the amendment, sat by or stood by and heard his attorney state to the defendant Hamilton that the contract meant exactly what Hamilton wanted it to express, will not thereafter be heard to assert that his intention in entering into the contract was different. Civil Code, § 4267. "The intention of the parties may differ among themselves, but in such cases the meaning placed upon the contract by one party and known to be thus understood by the other party shall be held as the true meaning." *Reeves* v. *Daniel,* 143 *Ga.* 569 (2) (85 S. E. 756).

It was held in the very beginning of the history of this court, in *Rogers* v. *Atkinson,* 1 *Ga.* 12, 24, 26, that in cases of fraud and mistake in reducing a contract to writing relief will be granted the injured party, whether he sets up the matter affirmatively or as matter of defense; and in the recent case of *Green* v. *Johnson,* 153 *Ga.* 738, 749 (113 S. E. 402), the same principle is reannounced. In *Wyche* v. *Greene,* 11 *Ga.* 159 (2), it was said by Judge Lumpkin that "If a writing has been executed, with a view of obtaining a particular object, and by mistake it has been so drawn as not to have the contemplated operations at law, chancery will reform the instrument, so that it will fulfill the intention of the parties. Agreements, whether executed or executory, within or without the statute of frauds, whether for the conveyance of real or personal property, will be reformed by courts of equity, on the ground of mistake;" and (p. 169) "relief granted to the injured party, whether he sets up the mistake affirmatively by bill, or as a defence, or to rebut an equity." The answer in the present case complies with

the requirement as made in *Harris* v. *Brandon,* 135 *Ga.* 131 (68 S. E. 1040), as to a special prayer for reformation; and so the answer could not have been stricken for the omission of the requisite prayer. The defendants assert that they signed the contract induced by the statements of plaintiff's counsel into a mistaken view as to the legal effect of the provision in the contract to which we have referred. "This court has frequently held that mistakes as to the legal *effect* of an instrument are relievable in equity." *Clayton* v. *Bussey,* 30 *Ga.* 946, 948 (76 Am. D. 680). See *Lucas* v. *Lucas,* 30 *Ga.* 191 (76 Am. D. 642). The defendants would not be excused for ignorance of the law, but under the ruling just quoted the allegations of the answer plainly show that there was a mistake on the part of the defendants and of the attorney for the plaintiff as to the legal effect of that portion of the contract which is now sought to be reformed, to which the plaintiff, being present, assented, or at least, so far as appears, participated; and "where there is a difference between the legal effect produced by the words, and the effect intended to be produced by them, the words, with their mistaken effect, shall yield, and the true intention shall prevail." *Lucas* v. *Lucas,* 30 *Ga.* 203. We think that the description of the mistake and of its results, and of the disadvantage at which the defendants were placed by the omission, is sufficient to withstand a general demurrer. *Kight* v. *Gaskin,* and *Jackson* v. *McCalla,* supra.

2. Even though it were doubtful as to the sufficiency of that portion of the answer which relates to the reformation of the contract, there can be no question that the answer set up such a case of fraud by misrepresentations by the plaintiff as would have entitled the defendants to a recovery upon their counter-claim for damages. The plaintiff wished to sell the timber upon the Dave Houser place in Houston County, and the defendant Hamilton went to the place in March to examine and investigate the property. He found about three fourths of the land upon which the timber was growing under water. The timber itself met his requirements, but he knew nothing as to whether the water stood continuously upon the lowlands or for only a portion of the time, and, if for only a portion of the time, the duration of the overflow. He went to see the plaintiff, and was told by him that the water was due to the recent heavy rains; that one fourth

of the ground upon which the timber he was offering to sell was growing was firm and dry at all seasons of the year, and that, while the remaining three fourths was subject to overflow, the soil was neither soggy nor boggy, and that it was suitable for the logging and hauling of timber except in the spring of the year, and that in the summer it was and had always been as hard and firm as any street in the city of Macon. The defendants allege that the plaintiff knew at the time he made these representations of their absolute falsity, but that in good faith they believed he was telling them the truth, and that by reason of his misrepresentations they were compelled to expend $2000 more than the ordinary expense of logging at the mill or $2000 more than they would have been required to expend if the statements of the plaintiff had been true. It is strongly insisted that there is no reason why the defendants should have believed the statements of the plaintiff, and therefore no reason, had they used ordinary caution and diligence, why they should have been deceived; and that for that reason they cannot assert that the contract was induced by fraud. We cannot agree with this contention. We see no reason why they should not have believed the statements of the plaintiff, or why they should not recover if the plaintiff violated his duty to speak the truth if he spoke at all. The plaintiff was not required to disclose to the defendants or to inform the defendants of the condition with reference to the overflow or as to the reason for that condition. It may be that he did not know the true condition, or how much of the land was soggy, or why it was overflowed, or how long this condition continued; whether portions of it were soggy all the year or only a portion of the year; and if he did not know, he could be held liable for misrepresentations if he truly stated his ignorance. But he talked. He stated to the defendants that in the summer time when the water subsided and dry weather came the soil was suitable for hauling and logging, and that indeed, during the period mentioned by him, it was as hard as the streets of Macon. While the plaintiff may not have been under any obligation to make any explanation at all, the misrepresentation of material facts by which the opposite party is damaged is actionable.

The answer sufficiently set out the fraud, and was not demurrable or subject to motion to strike, and the court erred in

striking this portion of the answer. Neither portion of the answer should have been stricken; but even if one should have been dismissed, a general demurrer to the entire answer is too general to separate the good from the bad, the chaff from the wheat.

3. The error in striking the answer rendered the subsequent proceedings in the trial nugatory, and for that reason it is unnecessary to consider the assignment of error upon the overruling of the motion for a new trial.

*Judgment reversed. All the Justices concur.*