## RUFF *v.* COPELAND *et al.*

There was no error in the ruling of the judge refusing to grant an injunction.

OCTOBER 12, 1911.

Petition for injunction. Before Judge Edwards. Haralson superior court. July 7, 1911.

At an interlocutory hearing of a petition for injunction and other relief, general and special demurrers had been filed. The plaintiff offered to submit evidence, which his attorney stated to the court would sustain the allegations of the petition. The judge refused to allow the evidence introduced, and ordered that a former restraining order be dissolved and that the prayer for injunction be denied. The object of the suit was to set aside the sale of a certain corn mill, and real estate appurtenant thereto, which the defendants had made to the plaintiff, and to cancel purchase-money notes which the plaintiff had executed, and, in aid of the other relief, to enjoin the defendants from negotiating the sale of certain of the purchase-money notes which had not matured. It was alleged, among other things, in effect, that, by way of inducement to plaintiff, defendants by letter represented to plaintiff, on November 25, 1910, that "our territory extends from Cedartown to Griffin, Ga., on Central of Georgia, and from Austell to Anniston, Ala., on Southern Railway. And our local custom territory extends 8 miles east and 8 miles north, 10 miles west and 12 miles south, our exclusive territory. We have milling and [in] transit rates over both railroads, and a reputation established that takes care of itself; in fact, if you will come and see for yourself, you will find an opportunity seldom ever offered for sale." Relying on such representations, the purchase was made on December 10, 1910; the

plaintiff giving promissory notes, maturing at intervals, to cover the purchase-price, and the defendants executing a bond for title and delivering the property to the purchaser. Plaintiff undertook to operate the mill, but soon found that all of the representations made by the defendants "were false and fraudulent and were made for the purpose of swindling him." The capacity of the mill was not as represented. The defendants did not have the exclusive territory they claimed, there being at least eight mills that ground corn in the territory which defendants made plaintiff believe was their exclusive territory. Defendants had no milling in transit rates on either of the railroads. Soon after plaintiff took charge of the mill property he was ousted from a large part of it by the Central of Georgia Railway Company, and defendants can not convey such part. On April 29, 1911, plaintiff wrote defendants a letter, which in effect complained that they had misrepresented, as hereinabove set out, and proposed to "return to you the property, with improvements, in consideration of the return to me of all the papers now held by you against me, with all money to you by me on said property, you to have a reasonable amount for the use of the property, less a reasonable amount as damage which I have incurred in loss of money and time and the expense of moving my family from Smyrna, Ga., to Bremen, Ga. To determine the amount for the use of your mill and my loss and expense, I am willing to submit to and abide the decision of three disinterested men of the town of Bremen, Ga. I am willing at any time to carry out this proposition and give you possession." To this letter defendants "declined" and "refused to reply," but instead have endeavored and are still endeavoring to sell and transfer the notes executed by plaintiff, in order to avoid any defense or claim of fraud which plaintiff has against them. All the representations and promises, so made by the defendants as aforesaid, were false and fraudulent, and were made with a view to "dupe, deceive, and defraud" plaintiff and "rob him of his money, home, and property."

*Frank L. Neufville, George F. Goher, I. N. Cheney,* and *J. S. Edwards,* for plaintiff.

*C. E. Roop* and *Griffith & Matthews,* for defendants.

ATKINSON, J. The object of the suit was to compel the defendants to rescind a contract of sale of real estate, to recover back so much of the purchase-price as had been paid, and to recover as

damages the expense he incurred in moving his family. The case must be decided as if all the allegations of the petition were admitted to be. true, because the judge refused to permit the plaintiff to introduce evidence in support of his allegations, and upon the mere reading of the record entered a judgment against him. Where land is sold and delivered, but title is not to pass until payment in full of the purchase-money, if the purchaser loses part of the land from defective title, he may claim either a rescission of the entire contract, or a reduction of the price according to the relative value of the land so lost. Civil Code (1910), § 4124. According to the allegations of the petition, this was an entire contract, and the plaintiff was ousted from a part of the property, title to which was not vested in defendants and could not be conveyed by them. Under such circumstances the plaintiff had the right to rescind the entire contract, which would carry with it the right to recover so much of the purchase-money as had been paid, and to have surrendered the unpaid notes and securities given for the balance of the purchase-price, if they were in the hands of the defendants. It would also carry with it the right to plead an abatement of the purchase-price, if the defendants were suing on the notes. One feature of the plaintiff's petition presented the theory that he was entitled to rescind the contract, and recover so much of the purchase-price as had been paid, and also have the unpaid notes and securities restored to him; and that, based on these rights, he was also entitled to an injunction to prevent an assignment of the notes and securities, so that they would not thereby be placed in the hands of third persons and beyond the reach of plaintiff's equity. It was not alleged that the defendants were insolvent or non-residents, but it was not absolutely essential that such grounds for equitable interference should exist. If the plaintiff were entitled to rescind and have his notes and securities surrendered, it ought to be done at once, without making him await the maturity of the notes and payment thereof to third persons, and then take the risk of collecting back the amount from the defendants. Such relief would be open to him, but it would not be that adequate and complete relief which equity would afford him by staying the transfer of the notes and securities and allowing the plaintiff to set up his defense while in the hands of the original payee. But, to whatever relief the plaintiff might be entitled, the election which

he has made by basing his right to recover on rescission has made it essential that he show a right to rescind. Where a contract is timely repudiated on sufficient grounds, and restoration properly offered, a suit will lie to recover back what was paid in pursuance of the contract; but such is not the case if the contract is not repudiated, or, being repudiated, there are not sufficient grounds to justify it.

Fraud is another ground for the rescission of a contract in equity. Considering the allegations of the petition, as admitted, to be true, it appears that for the purpose of defrauding the plaintiff the defendants made misrepresentations as to the exclusive territory of the mill and as to the milling in transit rates over the railroads. These were matters peculiarly within the knowledge of the defendants; and for them to willfully misrepresent the facts in regard thereto in such manner as to deceive the plaintiff and induce him to buy, when he would not have done so had the truth been revealed, would amount to such a fraud upon the plaintiff, after he had acted thereon to his injury, as would authorize him to cancel the contract. But in order for the party defrauded to cancel the contract on account of fraud upon the part of the opposite party, inducing him to act to his injury, he should repudiate the contract promptly upon discovery of the fraud. *Strodder* v. *Southern Granite Co.,* 94 *Ga.* 626 (19 S. E. 1022) ; *Pearce & Williams Co.* v. *Borg Chewing Gum Co.,* 111 *Ga.* 847 (36 S. E. 457) ; *Tuttle* v. *Stovall,* 134 *Ga.* 325 (67 S. E. 806). He should also offer to restore the opposite party to his original status. Civil Code (1910), § 4305. Relatively to the respective grounds urged for rescission, it does not clearly appear what part of the property the plaintiff was ousted from, or when the ouster occurred, or when plaintiff claims to have discovered the facts constituting the alleged fraud, so that it might be said with any degree of certainty that he acted with due diligence in repudiating the contract. Being the plaintiff, the burden rested upon him to make it so appear. Nor did the plaintiff, in his letter of repudiation and offer to rescind, propose unqualifiedly to restore the status. His offer was coupled with the condition, among others, that the defendants should submit to the arbitrament of three men in a particular place, and should bear the expense of moving plaintiff's family from Smyrna, Ga., to Bremen, Ga. There is nothing to indicate the amount of this expense, or to

show that it was reasonably within the contemplation of the parties at the time the contract was made, so as to render it a proper element of damages for the plaintiff to recover against the defendants.

Assuming that, in order to rescind, the plaintiff might not be required to forego his claim for damages, yet if in his offer he restricts the manner of ascertaining his damages, and his demand includes the payment of damages for which the defendants are not liable, and it is not shown that the property is in the same condition as when received, or, if it has been damaged, there is no offer to pay damages for its deterioration, such offer would not amount to an offer to restore the status. While, as against general objections, the admitted allegations were sufficient to show grounds for cancellation on each of the two theories that were relied upon for rescission, they were not sufficient to show affirmatively that the plaintiff had timely and in an appropriate manner offered to make such restoration as would put the defendants in the position which they occupied originally; and accordingly they were not sufficient to show that the plaintiff was in a position to ask rescission in a court of equity. Having founded his application for injunction upon the right of rescission, there was no error in refusing the injunction.

*Judgment affirmed. Beck, J., absent. The other Justices concur.*