## GIBSON v. ALFORD et al.

1. The contract between the plaintiff and the defendant Alford is one of bargain and sale, and not one of lease.

2. Subject to a sufficient showing of mutual mistake, or mistake on one side and fraud on the other, when it appears that a contract of sale was made with reference to a certain designated tract of land, reformation will be decreed of the misdescription in such contract when it includes more land than ought to be included, or contains less land than the parties agreed upon.

(a) A court of equity will reform a contract of sale of land when from mutual mistake the contract as written does not express the true agreement of the parties.

(b) Equity will also reform an instrument when there is ignorance or mistake on one side and fraud on the other.

(c) Where a vendor agrees to sell a designated tract of land to another and points out to the latter its boundaries, and the purchaser relies upon the representations of the vendor as to the boundaries, and where such boundaries include lands to which the vendor has no title, in consequence of which the purchaser loses the same, the purchaser, when sued on notes given for the purchase-money, can set off at law the value of the portion of the land so lost, against the purchase-money. This would be true whether the misrepresentations were designedly made by the vendor to deceive the purchaser, or were innocently made, if the vendee relied upon such misrepresentations in making the purchase and was thereby damaged.

(d) But this right will not prevent the purchaser from having the instrument reformed, if he wishes to assert his full rights under the contract when reformed.

3. In his answer the defendant alleged that, not knowing the lines or boundaries of the tract of land, he called on the plaintiff to point out the lines, and that said lines were pointed out to him by the agent of the plaintiff. The plaintiff demurred specially to this allegation, upon the ground that the name of said agent was not given. This allegation was open to this special demurrer; but the plaintiff by an appropriate amendment gave this information. For this reason the court did not err in overruling this ground of special demurrer.

4. Where the answer alleged that the plaintiff had previously contracted in writing to sell to the defendant and another person this designated tract of land, and had pointed out to the defendant its boundaries, and that thereafter the plaintiff executed her bond for title to such purchasers, and again pointed out the boundaries of the tract, and that subsequently said bond for title was cancelled by the defendant, he

Appeal and Error 4 C. J. p. 650, n. 37.

Cancellation of Instruments 9 C. J. p. 1199, n. 36; p. 1200, n. 54.

Landlord and Tenant 35 C. J. p. 1141, n. 29.

Pleading 31 Cyc. p. 287, n. 47.

Reformation of Instruments 34 Cyc. p. 906, n. 22, 28; p. 917, n. 87; p. 920, n. 7; p. 937, n. 60; p. 938, n. 61; p. 978, n. 89.

Vendor and purchaser 39 Cyc. p. 1175, n. 4; p. 1936, n. 47.

having become the sole holder of said bond under an assignment to him of the interest of his copurchaser therein, and that the contract sued on was executed in lieu of such cancelled bond for title, and was intended to convey the tract designated in the aforesaid contract of purchase and bond for title, such allegation as to the previous pointing out of these boundaries to the defendant was not open to a special demurrer based upon the ground that these previous representations were irrelevant.

5. Where a party who is entitled to rescind a contract on ground of fraud or false representations, and who has full knowledge of the material circumstances of the case, freely and advisedly does anything which amounts to a recognition of the transaction, or acts in a manner inconsistent with a repudiation of the contract, such conduct amounts to acquiescence, and, though originally impeachable, the contract becomes unimpeachable in equity. If a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once announce his purpose and adhere to it. Otherwise he can not avoid or rescind such contract.

6. The court having erred in overruling the demurrer to the portions of the answer seeking to rescind the contract sued upon, the subsequent trial was nugatory; and it becomes unnecessary to deal with the errors alleged to have been committed during the progress of the trial.

No. 4716.  FEBRUARY 10, 1926.  REHEARING DENIED FEBRUARY 24, 1926.

Equitable petition.   Before Nathan Harris, judge pro hac vice. Floyd superior court.   December 23, 1924.

On October 10, 1923, Mrs. Gibson brought suit against P. E. Alford for breach of contract.  The pertinent portions of the contract on which the plaintiff sued are as follows:  The contract is dated January 11, 1923, and is between Mrs. Gibson, party of the first part, and P. E. Alford, party of the second part.  By it Mrs. Gibson rents and leases unto P. E. Alford for a period of four years . . . "that farm in the County of Floyd and State of Georgia on the Etowah River at Bass' Ferry, known as the Hurt Farm."  Then follows a minute description of the land. "The said P. E. Alford agrees to pay as rental therefor for the year 1923 the sum of $15,250.00, which is to become due upon the first day of December, 1923; and thereafter agrees to pay a yearly rental, . . at the times and in the sums as follows, to wit: December 1st, 1924, $4,805.00; December 1st, 1925, $4,525.00; December 1st, 1926, $3,745.00.  That, upon payment of all sums due under this contract, the said Mrs. Mattie Gordon Gibson binds herself to execute and deliver to the said P. E. Alford, his heirs, executors, administrators, or assigns, a warranty deed to said property. . . It is also understood and agreed . . that the said P. E.

43

Alford shall clear and have ready for cultivation all the lands located on said tract from which the timber has been cut to this date, by September 15th, 1923, and upon failure to carry out this provision of this contract that title to all of the crops raised upon said land . . shall vest in and become the property of Mrs. Mattie Gordon Gibson, and the proceeds thereof shall be used for the purpose of clearing said lands for cultivation. . . It being understood and agreed that if default be made in the payment of any sums due under this agreement, that the said P. E. Alford can be evicted as a tenant holding over, and he shall be so considered." In her petition the plaintiff alleged that the defendant failed to clear and have ready for cultivation, by Sept. 15, 1923, all the lands embraced in said contract from which the timber had been cut prior to its date, and that in consequence of his default the title to his interest in all crops grown on said lands became her property. She alleged that the crops were fast maturing, and would be gathered and the rents turned over to the defendant. She prayed that the defendant be enjoined from collecting any of the rents, that a receiver be appointed to collect and hold the rents until the final order, that an accounting be had with the defendant, that she have judgment for such sum as may be found due her on account of the rents already paid for the year 1923, and that she have such other relief as may be meet and proper in the premises.

To this suit the defendant filed his answer on December 8, 1923. He alleged that the transaction out of which said contract arose was as follows: On April 7, 1920, the defendant and F. L. Alford entered into a contract by which the plaintiff agreed to sell to them the lands set forth in said contract. The defendant, not knowing the lines of said land, called upon her to point them out. Said lines were pointed out to him by the agent of the plaintiff, and he went into possession of said lands so pointed out to him. He had no means of ascertaining the true boundary lines of this property. He relied upon the assurance of the plaintiff and her agent that the lines pointed out were the true boundaries of the property, and represented the lines referred to in said contract. On May 8, 1920, in pursuance of said agreement of purchase, a bond for title was executed and delivered by the plaintiff to the defendant and F. L. Alford, conditioned to convey the

lands so described upon the payment of certain sums of money therein stipulated. F. L. Alford thereafter transferred and assigned his interest in the premises to the defendant, and he took possession thereof. Thereafter he agreed to cancel said bond for title, which was done, and the contract involved in this case was executed and delivered in lieu thereof. Thereafter a suit was instituted by one Mrs. Ellis against him, and he was dispossessed from a portion of said lands, consisting of 110 acres, more or less. Upon an examination of the title to said lands, it was found that the plaintiff had no title to this portion, which was within the boundaries so pointed out to him, and which comprised a part of the lands of which the plaintiff was in possession, and which was pointed out to the defendant as being a part of the land covered by said original contract of purchase, said bond for title and the contract now in existence. The defendant cut and removed valuable timber from said 110 acres, and accounted to the plaintiff for the proceeds thereof. Plaintiff demanded from him an accounting for the proceeds of all timber cut on said land, and exercised rights of ownership over the same. He made valuable improvements on said land, and rented the same for the year when he was dispossessed thereof. He vouched Mrs. Gibson into court to defend his title to said land, which she wholly failed and refused to do. She now claims that said land lies without the description set forth in the contract attached to the petition and in said bond for title. At the time he entered into possession of said lands under said bond for title he paid to the plaintiff the sum of $5,000 in cash, and since that time he has paid to her various sums aggregating approximately $5,210. By reason of the shortage in said lands the remaining portions thereof are not worth in excess of the sum of $15,000. That portion of the lands of which he was dispossessed was of the reasonable value of $11,750. By reason of the failure of his title to said portion of said lands and the total loss thereof, together with the loss in the sum of $200 for improvements placed thereon, he is not indebted to the plaintiff in the sum claimed, but is indebted to her only in the sum of $15,000. On December 1, 1923, he tendered to the plaintiff the sum of $15,000 in cash, and demanded deed to said premises described in said contract, exclusive of the land of which he has been dispossessed. The plaintiff refused to

accept said tender, and refused to make a deed to him. By reason of these facts he is not indebted to the plaintiff in any sum whatever, and he has not breached his contract in any wise. Said tender is a payment of said debt, and this defendant is entitled to a decree of title to said lands in him on payment of said sum. He makes tender of said sum as a continuing tender to the plaintiff, which will be paid to her at any time she may elect. He prays that the title to said lands be decreed in him upon the payment by him to plaintiff of the sum of $15,000, that his damages be determined and held by this court to be $11,750, that the court by proper decree determine that said tender vested in him under said contract full title to said property, and that the plaintiff be enjoined from taking any other proceeding against him to dispossess him of said property, pending the determination by the jury of the damages sustained by him by reason of the breach of said contract.

By an amendment, filed December 22, 1923, the defendant alleged that lot No. 325, which embraced said 110 acres, was omitted from the description in said bond or contract, by reason either of the mutual mistake of himself and the plaintiff, or else by reason of mistake upon his part and fraud upon the part of the plaintiff in pointing out to him said property as being a part of the land embraced within said description and owned by her, when the same was not within the said description and was not owned by her. By reason of these facts said contract does not speak the true intent of the contract between the parties, but the same omits the said 110 acres of said lot No. 325, which should be embraced therein, by reason of the fact that it was actually bought by the defendant and pointed out to him through mistake. He prayed that the contract be reformed to speak the true intent of the parties by including within the description of said lands, by definite description and reference thereto, all of said lot No. 325, and that after said contract is so reformed the relief prayed by him in his. original answer and cross-bill be granted, that the value of said portion of said lands be deducted from the amount of the purchase-money due under said contract, and that it be decreed that upon the payment of said sum found due by this defendant the plaintiff execute and deliver to him good and sufficient deed to the remainder of said property to which he holds title exclusive of lot No. 325.

On March 1, 1924, the defendant again amended his answer and made these allegations: Prior to the purchase of the lands by the defendant and F. L. Alford, the latter was in possession of said property, including said 110 acres, as the tenant of plaintiff, and the boundaries of the tract had been pointed out by her to him, and he was familiar therewith. With this knowledge he and Alford entered into a preliminary contract of purchase of said property with the plaintiff, a copy of which he attaches as an exhibit to his answer. Prior to the execution of said contract the defendant and F. L. Alford requested that the lines around said property be definitely pointed out to them, which was done by the plaintiff as set out in his original answer. On May 8, 1920, relying on the representation of the plaintiff as to the boundaries of said lands, the defendant and F. L. Alford paid to the plaintiff the sum fo $5,000 cash, and executed and delivered to her their notes aggregating the sum of $25,000, and she executed and delivered to them her bond for title, copy of which he attaches to his answer as an exhibit. At that time the defendant and F. L. Alford believed that the land known as lot No. 325, which had been pointed out to them by plaintiff as a part of the land to be sold and embraced in said bond for title, was actually embraced therein under the description therein contained. Thereafter he proceeded with the clearing and cutting the timber from said lands, and particularly from said 110 acres. Plaintiff ordered him to cease cutting the timber from said lands, claiming the same belonged to her, and threatened to enjoin him from cutting any timber from said lands, and finally forced him, in order to avoid litigation, and to enable him to acquire said lands, to agree to pay her $4 per thousand for all timber cut from said land including the said 110 acres. During the cutting of the timber from the said 110 acres, plaintiff went on said tract and saw the timber cut therefrom, and notified prospective purchasers of such timber from the defendant not to buy any timber from said tract from him until they knew that the said sum of $4 per thousand had been paid to her. On January 11, 1923, the defendant, still believing that said 110 acres was a part of the lands purchased and described in said bond for title, and was a part of the same purchase represented by the contract and bond for title above set forth, agreed to substitute for said bond for

title the contract involved in this suit. By reason of the facts aforesaid, the entire transaction was one single transaction, and all of said writings represented merely different forms of the original purchase. In each instance the lands originally pointed out were the lands which were to be sold. Said 110 acres was not a part, of the lands embraced in the description in said last-named contract. By reason of the tender set forth in his original answer, he is owner in law and equity of the remaining lands, and entitled to a decree so declaring him to be upon the payment of the amount of said tender. The various payments made to the plaintiff on the purchase money of said land are set out, and amount to $9660. He has paid the taxes on said land for the year 1920, amounting to $117. He has made improvements thereon amounting to $2865. He has received as rents from said lands not more than $1580. He is willing to do equity in the premises, to have a rescission of the contract, to account for all rents and profits received from the property, and to re-deliver possession thereof to the plaintiff upon the payment by her to him of the amounts aforesaid paid by him upon said purchase, improvements, and taxes, less the rents and profits received by him. He was dispossessed from said 110 acres by Mrs. Ellis by the physical taking possession thereof by her. He prays, that F. L. Alford be made a party to the cause; that in the event the court should hold that he has not by his tender fully discharged all obligations touching the purchase of said lands, and is not entitled to a decree of title thereto upon the payment of the sum of $15,000, then said contract be declared and held to be rescinded, and that he recover of plaintiff the sum found due him on said accounting, allowing to him all sums paid to the plaintiff, together with taxes and repairs, and deducting therefrom the rents received by the defendant from said land; and that he have general relief.

The pertinent portions of the contract between the plaintiff and P. E. and F. L. Alford are as follows: The agreement is dated April 7, 1920. It recites that P. E. Alford and F. L. Alford have paid to the plaintiff the sum of $100 in part payment of "all that tract or parcel of land situated, lying and being in Floyd County, Georgia, and being what was formerly known as the Bass plantation on the Etowah River in said county, except

that portion of said plantation heretofore sold by Alfred Shorter to N. H. Bass whose purchase consists of two hundred and seventy acres, more or less, and embraces parts of lots number 324 in the 22nd district and 3rd section of said county, and parts of lots number 343 and 344 in the 23rd district and 3rd section of said county, and.which is more particularly described in a deed from said Shorter to said N. H. Bass; the remaining portions of said lots, together with lots number 338, 341, 342, and those parts of lots number 303, 304, and 337 which lie on the south side of the Etowah River, in the 23rd district and 3rd section of said county, compose the tract which is hereby conveyed, excepting however the ninety-nine (99) acres, which was set apart as a homestead to N. H. Bass and which is claimed at this time by the widow of Joe Bass. It being the intention of this contract to' convey the land which was conveyed to" plaintiff "in the division of the estate of Miss M. Hurt, and which the said Mrs. Gibson has been in possession of." The purchase-price of said land is thirty thousand dollars, which said P. E. Alford and F. L. Alford agree to pay to Mrs. Gibson as follows: One hundred dollars in cash; four thousand, nine hundred dollars thirty days after date; one thousand, five hundred dollars due December 1st, 1920; four thousand dollars on each December 1st thereafter until the full sum of principal and interest is paid, or any part of said four thousand dollars which may constitute the last payment. Said deferred payments to bear interest at the rate of seven per cent. (7%) per annum, and if said interest is not paid annually on the 1st day of December, said interest shall become a part of the principal, and shall bear interest at the rate of seven per cent. per annum. ˙ Plaintiff agrees that upon payment of the said sum of four thousand, nine hundred dollars due thirty days after date, and the delivery to her of the promissory notes of said P. E. and F. L. Alford, in accordance with the terms as above set forth, she will execute and deliver to them her certain bond for title, obligating her to execute and deliver to said parties a warranty-title deed to said described property upon the payment of the said notes and the interest due thereon. Said P. E. and F. L. Alford agree to pay all State and county taxes on said property for the year 1920, and thereafter, and are to keep up all insurance on the buildings on said premises at their own expense.

This agreement is subject to the approval of the title to said lands by the attorneys at law of the purchasers, who have thirty days from date in which to make said investigation and report on the same. If said attorneys certify that said title is not good, then Mrs. Gibson is to return to the Alfords the one hundred dollars paid under, the terms of this contract, and the same shall be null and void and of no effect.

The pertinent parts of the bond for title referred to in the answer of the defendant are as follows: It is in the penal sum of $60,000, and is dated May 8th, 1920. By it the plaintiff agrees to sell to the Alfords "that farm in the County of Floyd and State of Georgia, on the Etowah River, at Bass' Ferry, known as the Hurt farm, it being lot two in the division of the properties held prior to —— day of October, 1884, as tenants in common by Mrs. Emma W. Gordon and Miss Martha Hurt, said lot two of said division including the balance and remainder of the land and improvements known as the Bass farm, owned jointly in 1884 by Miss Hurt and Mrs. Gordon, after deducting lot one of said division." The bond for title then recites that the land therein conveyed is that tract of land formerly known as the Bass plantation on the Etowah River, in Floyd County, with the exceptions in the contract last referred to, and another exception of 80 acres off of the north half of lot 342, and all of lot 341; "it being expressly understood that the property conveyed is that farm which was set aside to Mrs. Mattie Gordon Gibson in the division of the property of Miss M. Hurt." The purchase price is thirty thousand dollars, to be paid as follows: Five thousand dollars in cash; one thousand, five hundred dollars on Dec. 1st, 1920; and four thousand dollars on the first day of December of each year until the full price is paid. All of the deferred payments are to bear interest at the rate of seven per cent per annum from date, and are to be paid annually on the first day of December of each year; and if a payment be not made annually as the same becomes due, it is to become a part of the principal and bear interest at the rate of seven per cent. from its due date, and interest thereon shall be payable annually. The purchasers are to pay the taxes for the year 1920 and thereafter, and are to keep up all insurance on the buildings on said premises. If default be made in the payment of said taxes, in-

surance premiums when the same became due, or any of said deferred payments or the interest thereon in accordance with the terms hereof, then all of said deferred payments are to become due and payable at once at the option of the seller, time being made of the essence of the contract. Upon the payment of the said several sums of money at the times specified in the bond, and should purchasers comply with all of its terms and conditions, then the seller is bound to make and execute to them or their heirs, executors, administrators, successors, and assigns, a good and sufficient warranty title deed to the above-described parcel of land; but on failure of the purchasers to pay the said sums of money or any part thereof, or to comply with the terms and conditions hereof, at the times specified, then this bond is to be void and of no effect.

To the answer and cross-bill of the defendant, and the amendment thereto, the plaintiff demurred upon the grounds: (1) that the same sets forth no defense in law or equity to the petition; and (2) that the same sets forth no facts upon which affirmative relief can be granted against her. There were special grounds of demurrer which are sufficiently stated in the opinion. The court overruled her demurrer, and the plaintiff excepted. The case proceeded to trial, and the jury returned a verdict finding in favor of the defendant for reformation and rescission of the contract as prayed; further finding in favor of the defendant in the sum of $5,000, and that the title to the lands remain in the plaintiff. The plaintiff moved for a new trial upon various grounds. The motion was overruled; and to this judgment also the plaintiff excepted.

*Maddox, Matthews & Owens* and *James Maddox,* for plaintiff.

*Willingham, Wright & Covington* and *Denny & Wright,* for defendants.

HINES, J. (After stating the foregoing facts.)

1. The contract between the plaintiff and defendant is one of bargain and sale. *Hays v. Jordan,* 85 *Ga.* 741, 749 (11 S. E. 833, 9 L. R. A. 373); *Lytle v. Scottish-American Mortgage Co.,* 122 *Ga.* 458 (50 S. E. 402). It is not a lease with an option given therein to the defendant to purchase the land embraced therein. The rights and liabilities of the parties must be determined by this construction of the instrument.

2. Is the defendant entitled to reformation of this contract, under the facts alleged in his answer? He alleges that he was unfamiliar with the boundaries of the tract of land which is the subject-matter of the sale evidenced by this contract. He applied to the plaintiff to point out its boundaries, which she did by an agent. The boundaries so pointed out embraced 110 acres of land not embraced in the tract which he bought, and which did not belong to the plaintiff. The defendant seeks to have the contract so reformed as to contain the true agreement between him and the plaintiff, and to embrace all the lands within the boundaries pointed out by the plaintiff. Subject to a sufficient showing of mutual mistake, or mistake on one side and fraud or inequitable conduct on the other, where it is made to appear that an agreement was made with reference to a certain designated piece of land, reformation of the contract made to evidence the agreement will be decreed if the misrepresentation in the contract or deed includes more land than ought to be included, or contains less than the parties agreed upon. 34 Cyc. 938; Civil Code (1910), § 4567; *Smith* v. *Barksdale,* 110 *Ga.* 278 (34 S. E. 582); *Green* v. *Johnson,* 153 *Ga.* 738, 749 (113 S. E. 402); Butler *v.* Barnes, 60 Conn. 170 (21 Atl. 419, 12 L. R. A. 273). So where the vendor of a lot of land by mistake staked it out so as to include land of an adjoining owner, and later conveyed it by deed which described the lot as bounded by the land of the adjoining owner, which both parties believed to describe the staked lot, the deed was reformed to conform to the lot as pointed out. Butler *v.* Barnes, supra. A court of equity will reform a contract of sale when, from mutual mistake or mistake common to both parties, an instrument does not express the true agreement of the parties. Equity will also reform an instrument where there is ignorance or mistake on one side, and fraud or inequitable conduct on the other. *Reese* v. *Wyman,* 9 *Ga.* 430; *Wyche* v. *Greene,* 26 *Ga.* 415; *Venable* v. *Burton,* 129 *Ga.* 537 (59 S. E. 253); *White & Hamilton Lumber Co.* v. *Foster,* 157 *Ga.* 493 (122 S. E. 29). Where the vendor sues the purchaser on notes given by the latter to the former for the purchase-money of land, the purchaser can defend at law by alleging and proving that at the time of the contract of purchase the vendor misrepresented to him the location of one of the boundaries of the tract

purchased, whereby he failed to get a portion of the land which
he contracted to buy, where such representation was made by the
plaintiff to the defendant knowingly and wilfully, and for the
purpose of deceiving the latter, and did deceive him to his dam-
age. *Brannen* v. *Brannen,* 135 *Ga.* 590 (69 S. E. 1079). The
rule would be the same if the misrepresentation was made inno-
cently by the vendor, if the vendee relied upon such misrepre-
sentation in making the purchase and was damaged. Fraud may
exist from misrepresentation by one party which does actually
deceive the other party, though the party making it was not
aware that his statement was false. Civil Code (1910), § 4113.
In the forum of conscience a misrepresentation of the former
kind is of deeper dye than one of the latter kind; but in the forum
of law both constitute fraud, the former positive fraud, and the
latter legal fraud. So while the defendant in such a case might
at law set off damages sustained by reason of such misrepresen-
tation against the purchase-money of the land bought, or against
any other obligation growing out of the contract of purchase, it
does not necessarily follow that the existence of such defense at
law will prevent equity from granting relief to one who wishes
to take advantage of the transaction in question, and who does
not wish to avoid the contract in question. The party who has
thus been deceived may wish to enforce the contract in accord-
ance with the boundaries represented by the vendor to be true
lines; and the fact that the vendee could thus set off the value
of the portion of the land embraced in these boundaries, to
which the vendor did not have title, and which he lost, does
not prevent him from obtaining reformation in equity, if the
other elements which justify reformation are present. 4 Page
on Contracts, § 2213. In such a case his remedy at law is not
full, adequate, and complete; and reformation of the instrument
will be granted in order to enable the vendee to avail himself
of all his rights under the contract, when the writing is re-
formed and made to express the, true agreement between the
parties. So we are of the opinion that the answer of the defendant
makes a case which entitles him to a reformation of this con-
tract.

3. The third headnote needs no elaboration.

4. In his answer the defendant further alleged that on April

7, 1920, he and F. L. Alford entered into a contract by which the plaintiff agreed to sell to them the lands embraced in the contract sued on in this case, and that at said time, not knowing the boundaries thereof, he called upon the plaintiff to point out the lines, which was done by her agent, and defendant took possession of the lands embraced in the boundaries so pointed out. He further asserts that he relied upon the assurance of the plaintiff and her agent for the true and correct lines of the property, which represented the lines referred to in said contract. Thereafter, on May 8, 1920, in pursuance of said contract of purchase, a bond for title was executed and delivered by the plaintiff to defendant and F. L. Alford, conditioned to convey the lands so designated upon the payment by them of the purchase-money thereof. F. L. Alford transferred said bond for title and his interest in said premises to defendant, he taking possession thereof. Thereafter he agreed to cancel said bond for title, which was done, and the contract sued upon was executed and delivered in lieu thereof. The boundaries of this tract of land so pointed out to him embraced 110 acres to which the plaintiff had no title. He further alleges that said 110 acres, more or less, were omitted from the description in said bond or contract by reason of either the mutual mistake of himself and the plaintiff, or else by reason of a mistake on his part and fraud on the part of the plaintiff in pointing out to him said 110 acres as being a part of the lands embraced within said description and owned by her; and that by reason of these facts said contract does not speak the true intent of the parties, but omits said 110 acres which should be embraced therein, by reason of the fact that it was so actually bought by the defendant and pointed out to him through mistake. He further alleges that by reason of the facts aforesaid the entire transaction was but a single one, and that all of said writings represented merely different forms of the original purchase, and in each instance the lands originally pointed out were the lands which were to be sold. The plaintiff demurred specially to the allegations that she had pointed out the boundaries of this tract of land to defendant when she previously agreed to sell these lands to him and F. L. Alford, and that she again pointed out the boundaries of the tract when she executed and delivered to them her bond for title. These allegations are not

open to this ground of special demurrer. The defendant alleges that in each instance she pointed out the boundaries of this tract, and that these boundaries embraced 110 acres, more or less, of land lot 325, to which the plaintiff had no title.

5. Was the defendant entitled to a rescission of this contract, under the facts alleged in his answer as amended? We do not think that the defendant made a case for rescission, under these facts. In her petition the plaintiff did not seek to rescind the contract. On the contrary, she undertook to enforce the contract, and to assert rights growing out of the breach of one of the provisions of the contract by the defendant. With knowledge of the alleged mutual mistake, and with knowledge of the fraud alleged to have been perpetrated upon him by the plaintiff, the defendant in his original answer did not seek to avoid or rescind this contract. On the contrary, he sought to enforce the contract against the plaintiff. In the first amendment to his answer he did not seek to rescind the contract on account of mistake or fraud. On the contrary he sought to reform the contract, and upon its reformation being had he prayed that he be given credit upon the purchase-money of these lands in a named sum, and that the plaintiff be decreed to specifically perform this contract by conveying the lands therein described, upon his payment to her of the sum of $15,000. In his last amendment to his answer he seeks rescission of the contract. In *Hunt.* v. *Hardwick,* 68 *Ga.* 100, this court said: "It is a well-settled rule that a party who is entitled to rescind a contract on account of fraud or false representation, when he has full knowledge of all the material circumstances of the case, if he freely and advisedly does anything which amounts to the recognition of the transaction, or acts in a manner inconsistent with its repudiation, it amounts to acquiescence, and, though originally impeachable, the contract becomes unimpeachable even in equity." In that case the court again held: "If a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon the discovery of the facts, at once announce his purpose and adhere to it." In *Smith* v. *Estey Organ Co.,* 100 *Ga.* 628 (28 S. E. 392), it was held: "Where the purchaser of goods seeks to avoid the contract of purchase on the ground of fraud, he must, upon discovery of the facts constituting the fraud, at once announce his purpose to

rescind, adhere to it, and make or offer to make restitution." This principle was again announced in *Pearce* v. *Borg Chewing-Gum Co.*, 111 *Ga.* 847 (36 S. E. 457). This is the doctrine of the Civil Code (1910), § 4305.

In *Tuttle* v. *Stovall*, 134 *Ga.* 325 (67 S. E. 806, 20 Ann. Cas. 168), this court made this ruling: "Where a vendee is induced to enter into a contract for the sale of personalty by the fraud of the vendor, when the former discovers the fraud he has an election of remedies. One of such remedies is to rescind the contract, and another is to affirm the contract and sue for damages for the fraud." In that case this court again said: "In order to exercise the right of rescission of a contract for fraud, the defrauded party must act promptly upon the discovery of the fraud, and must restore or offer to the other party whatever the former has received by virtue of the contract, if it is of any value." This principle has been announced and followed in many decisions of this court. *Strodder* v. *Southern Granite Co.*, 94 *Ga.* 626 (19 S. E. 1022); *Ruff* v. *Copeland*, 137 *Ga.* 56 (72 S. E. 506); *Jordy* v. *Dunlevie*, 139 *Ga.* 325 (77 S. E. 162); *Couch* v. *Crane*, 142 *Ga.* 22, 29 (82 S. E. 459); *Garner* v. *Butler*, 144 *Ga.* 441 (87 S. E. 471); *Wimpee* v. *Burt*, 148 *Ga.* 418, 420 (96 S. E. 993); *Legg* v. *Hood*, 154 *Ga.* 28 (113 S. E. 642). When the fraud is discovered, the party defrauded is put to his election to disaffirm the contract. *Jordy* v. *Dunlevie*, supra.

With knowledge of the mistake and fraud, for which he sought in his last amendment to rescind this contract, the defendant in his original answer sought to recoup damages against the purchase-money due the plaintiff under this contract, and in the first amendment to his answer he sought reformation of the contract. The assertion of both of these alleged rights necessarily treated this contract as valid and enforceable. He based his right to recoup these damages on the existence of the contract. His effort to reform the contract treated it as existing. Thereafter he could not elect to void and rescind the contract for mistake or fraud.

6. The court having erred in overruling the demurrer to the portions of the answer seeking to rescind the contract sued upon, the subsequent trial was nugatory; and it becomes unnecessary

to deal with the errors alleged to have been committed during the progress of the trial.

*Judgment reversed. All the Justices concur.*