26678.   TINGLE v. HARVILL.

ARGUED SEPTEMBER 16, 1971—DECIDED OCTOBER 21, 1971—
REHEARING DENIED NOVEMBER 18, 1971 AND
DECEMBER 1, 1971.

*William G. McRae,* for appellant.

*Arnold & Cate, William H. Cate,* for appellee.

ALMAND, Chief Justice. This appeal is from a judgment canceling and setting aside certain deeds and a contemporaneous agreement relating to certain tracts of land.

The litigation was begun as an equity action brought by Miss Mary Alice Tingle and her sister, Mrs. W. D. McDonald, individually and as attorney in fact for Miss Tingle, against Ben F. Tingle, III, and other named defendants. The complaint alleged in pertinent part as follows: that Miss Tingle was aged and infirm and had been addicted for several years to alcohol; that as a result of these conditions she had been from time to time subject to the undue influence and coercion of "certain persons"; that the defendant Ben F. Tingle, III, was the nephew of Miss Tingle and had, from time to time, consulted with her in the conduct of her business affairs; that because of their relationship, Ben F. Tingle, III, occupied a fiduciary relationship with respect to

Miss Tingle; that he had embarked upon a scheme to acquire the not inconsiderable estate of Miss Tingle for a sum representing only a nominal part of its value; that he had obtained warranty deeds to certain properties owned by Miss Tingle and by a corporation controlled by Miss Tingle by duress, fraud, misrepresentation, undue influence and coercion; and that he was able to accomplish this because of his relationship to Miss Tingle and because of her misplaced trust and confidence in his integrity. The properties involved were identified as being a tract of land in DeKalb County, Georgia (designated as Parcels I and II), another tract of land in Clayton County, Georgia (designated as Parcel V), and a tract of land in Walker County, Alabama (designated as Parcel IV). The complaint alleged that Parcels I and II had a value in excess of $300,000; that Parcel V had a value in excess of $50,000; and that Parcel IV consisted of 450 acres, more or less, and had a value of between $3,000 and $4,000 per acre. The complaint further alleged that Miss Tingle had entered into an agreement with Ben F. Tingle, III, whereby the Georgia properties would be conveyed to him in order that he might secure a loan in the amount of $65,000 to satisfy a judgment against Miss Tingle in the approximate amount of $15,000,. to satisfy a mortgage upon a portion of the property, and to pay various and sundry other debts owed by her. Finally, the complaint asserted that, in the event a proper accounting should reveal that Ben F. Tingle, III, had spent any of his own money to the benefit of Miss Tingle's estate, a proper legal tender would be made at that time to reimburse him. The plaintiffs prayed for various forms of relief, including cancellation of the said warranty deeds on the grounds that they had been obtained by fraud, duress, mistake, misrepresentation and undue influence, and on the further grounds that there had been a total and complete failure of consideration. In the alternative, it was prayed that the deeds be declared to be security instruments. By amendment, the plaintiffs alleged that the signature on the deed to the Alabama property was not that of Miss Tingle.

Subsequently, Miss Tingle was declared incompetent, and her guardian, Mrs. Gladys G. Harvill, was substituted for her in the suit. Mrs. McDonald thereafter became disassociated from the case.

In his answer and amendment, the defendant Ben F. Tingle, III, admitted that he had from time to time consulted with Miss Tingle; denied that the deeds were obtained by duress, fraud, misrepresentation, undue influence or coercion; stated that the Georgia properties were deeded to him in order that he might execute deeds to secure debt to various financial institutions; and asserted that the Alabama property was deeded to him in payment of a $14,000 loan made by him to Miss Tingle at a previous time.

The aforementioned agreement between Miss Tingle and Ben F. Tingle, III, which concerned only the Georgia property, was construed by the trial judge, and his ruling was appealed to this court. We held in *Tingle v. Tingle,* 227 Ga. 97 (179 SE2d 51), that the agreement and the warranty deeds to the Georgia property constituted a single transaction of conditional sale, reserving to Miss Tingle the right to repurchase the properties or to sell them, provided she reimbursed Ben F. Tingle, III, and assured him of no further liability. We further held that Miss Tingle's option to repurchase or to sell could be exercised by her guardian.

The suit then came on for trial on the merits, and a jury, upon a consideration of the validity of the instruments themselves, found in favor of Miss Tingle. The trial court ordered that all of the deeds complained of and the agreement be set aside and canceled, upon the reimbursement of certain sums of money to the defendant. The defendant Ben F. Tingle, III, appeals from that order.

■ Appellant enumerates as error the trial judge's denial of his motion for separate trials of the claim to the Georgia property and the claim to the Alabama property. Appellant contends that the allegations of fraud, duress and coercion were determined adversely to Miss Tingle when we construed the agreement relating to the Georgia property, *Tingle v. Tingle,* supra, and that, therefore, it was highly

prejudicial to permit the two claims to be tried together.

When this case was before us for construction of the agreement relating to the Georgia property, we were concerned only with the legal meaning of the transaction, as suming its validity, and we determined that it was a conditional sale. In no sense did we have before us at that time the question of the actual validity of the agreement or of the deeds. Whether they were, in fact, obtained by fraud, duress and coercion, as alleged, remained for the jury to decide. Since these allegations were the same as to the Georgia property and the Alabama property, there was no error in denying the motion for separate trials.

■ The trial court refused to sustain appellant's defense of failure of the complaint to state a claim upon which relief could be granted with respect to the Georgia property. He cites this ruling as error. Appellant contends specifically that this defense was good because (a) the complaint attacked the deeds but made no attack on the validity of the contemporaneous agreement between Miss Tingle and the appellant, (b) no notification was given to appellant of Miss Tingle's intention to rescind the agreement, and (c) no offer was made by Miss Tingle prior to filing suit to restore any benefits received under the agreement.

(a) We determined on the first appearance of this case that the agreement and the deeds constituted one and the same transaction. *Tingle v. Tingle,* supra. Accordingly, Miss Tingle's attack on the conveyances was good as an attack on the entire transaction, including the agreement.

(b) We understand appellant's claim that Miss Tingle did not notify him of her intention to rescind the agreement to mean that she thereby acquiesced in the agreement so as to waive any fraud and to bar rescission. Appellant relies on cases which hold that to rescind a contract for fraud, one must be diligent in discovering the fraud *(Cohron v. Woodland Hills Co.,* 164 Ga. 581 (139 SE 56)), and upon discovery of the fraud, one must act at once and announce his purpose to rescind. *Gibson v. Alford,* 161 Ga. 672 (5) (132 SE 442). Whether Miss Tingle was diligent and whether

she acted with sufficient haste were questions for the jury if those points were raised at the trial of the case, and Miss Tingle was not required to anticipate and refute them in her complaint in order to state a claim upon which relief could be granted.

(c) As for the absence prior to filing suit of an offer by Miss Tingle to make restitution of any benefits received under the agreement, we determined when this case was first before us that there was an excuse of formal tender in this case. *Tingle v. Tingle,* supra.

■ Appellant contends that the trial court erred in failing to charge the jury upon the issue of the mental competence of Miss Tingle to authorize the institution of the lawsuit. The validity of the power of attorney whereby Mrs. W. D. McDonald brought suit as attorney in fact for Miss Tingle was challenged in appellant's answer to the original complaint, wherein he stated: ". . . this defendant says that the power of attorney . . . is null and void for the reason that at the time the same was executed the plaintiff, Mary Alice Tingle, was a person who was mentally ill and incompetent to handle her own affairs."

Prior to the commencement of the trial of the case, Miss Tingle was declared mentally incompetent, and her guardian, Mrs. Harvill, was substituted for her. Once Mrs. Harvill decided to go forward with the case as she found it, it became a moot point whether Miss Tingle had been competent to give to Mrs. McDonald the power of attorney whereby she filed suit on Miss Tingle's behalf.

■ Appellant made a motion at the close of the evidence for a directed verdict with respect to the Alabama property, which was overruled. He enumerates this ruling as error on the grounds (a) that there was no offer of restitution made with respect to this property before the trial, and (b) that the evidence refuted the allegation of forgery and other allegations.

(a) As for restitution, we apply to the Alabama property the same rule that we applied to the Georgia property, that is, that full formal tender was excused. As we said with

respect to the Georgia property on the first appearance of this case, "From the allegations of the plaintiff's complaint it would appear that Mary Alice Tingle had not received any benefit that she should have restored, it alleging that the deeds were without any consideration and it praying for an accounting." *Tingle v. Tingle,* 227 Ga. 97, 103, supra. See also *Mayer v. Waterman,* 150 Ga. 613 (104 SE 497).

(b) Evidence was introduced upon the trial of the case from which the jury could have concluded that the deed to the Alabama property was forged, as alleged in the amended complaint. Mrs. Linda Noland, the adopted daughter of Miss Tingle, testified that she was familiar with Miss Tingle's handwriting; that she knew it almost like her own; and that she did not believe that the signature on the deed conveying the Alabama property was that of Miss Tingle. S. T. Phillips, who notarized the deed, testified that the deed was witnessed by James T. Algood; that he did not see Algood sign the deed; and that he did not see Miss Tingle sign the deed, but took Algood's word for it that she had done so. Miss Tingle testified that the signature was hers, but she had been adjudged mentally incompetent at the time of the trial. A jury question was thus presented as to the authenticity of the deed to the Alabama property, and there was no error in denying the motion for a directed verdict with respect thereto.

■ Appellant enumerates as error the trial court's charges on the issues of fraud, undue influence, the presumptions arising from a confidential relationship, and great disparity of mental ability, on the ground that there was no evidence authorizing the charges.

At the trial of the case, evidence was adduced from which the jury could have concluded that, at the time the deeds and the agreement were executed, Miss Tingle's mind was impaired by age and alcohol; that she relied on appellant Ben F. Tingle, III, and trusted him; and that there was a great inadequacy of consideration for the various conveyances. The testimony of Dr. Joe Cruz, a physician who had known Miss Tingle professionally and socially for twenty-

five years, together with testimony from various of her relatives, was that Miss Tingle was approximately 80 years of age; that her mental faculties had been impaired by age and by a predilection for drink; and that she suffered from hardening of the arteries. Harold Sheats, an attorney who had represented Miss Tingle at various times for many years, testified that, because of drinking, her condition and judgment had deteriorated; that people had taken advantage of her and induced her to sign notes; that he was in on several lawsuits in which such papers were contested; and that she had lost a great deal of money by doing things that a prudent, sober person of good judgment would not have done. Evidence as to the actual value of the properties included that given by T. W. Marshall, a banker, who testified that appellant had listed the properties on a financial statement as being among his assets, and that appellant had assigned to the properties values of $450,000 for the DeKalb County parcels, $50,000 for the Clayton County parcel, and $355,000 for the Alabama parcel. While such a finding was not demanded, the evidence, when taken as a whole, was sufficient to sustain a finding that appellant occupied a confidential relationship with respect to Miss Tingle, as contemplated by *Code* § 37-707.

There was no direct evidence of fraud, but as was said in *Stanley v. Stanley,* 179 Ga. 135 (3) (175 SE 496): "In these circumstances, an inference of fraud could have been drawn by the jury, and the evidence for the defendant grantee not being such as to rebut the inference as a matter of law, the court was authorized to charge the jury upon the subject of fraud." Moreover, "[f]raud is subtle, and slight circumstances are sufficient to show it, particularly in family transactions." *Woodruff v. Wilkinson & Hatcher,* 73 Ga. 115 (3).

"The rule that a presumption of undue influence arises, so as to cast on the grantee the burden of showing its absence, in those cases where the parties sustained a confidential relationship, the grantor being of weak mentality, and the party reaping the benefit occupying a dominant

position, has been often recognized by the courts." *Trustees of Jesse Parker Williams Hospital v. Nisbet,* 191 Ga. 821, 840 (14 SE2d 64).

Under the circumstances, there was no error in giving the charges complained of.

■ Appellant enumerates as error the court's overruling of his motion for a judgment notwithstanding the verdict, on the grounds that Miss Tingle made a retraxit of her claims against him by an open, public and voluntary renunciation, in open court, of her suit against him.

During the course of the trial, Miss Tingle was called as a witness by the appellant, and the following transpired:

"Q. (by the Court). Miss Tingle, I want to be sure I understand you correctly. Did you say you fully intended to sign all of these instruments which you have been testifying about? A. Oh, yes. Q. Did you read them over and know what you were signing? A. Yes, sir, I read them over, yes. Q. It is still your desire now, you think it is proper for you to do that? A. Yes. I am all right. I am competent now. But they have said they were going to take all my property away and I have been over there two years. Two years, nothing like it since the Bible time. Q. Your understanding is at any time you want to get back the Ponce de Leon (DeKalb County) property or Clayton property you can pay back Mr. Tingle the money which he has expended and get your property back? A. And I agreed upon that, yes. Q. What [sic] is what you want to do? A. That's right. Q. That is your intent and that is what you would like to do about it? A. Yes, sir. Q. In reference to the property in Walker County, Alabama, did you fully understand what you were doing there at the time you signed that instrument. A. Well, just like the other. I needed the money right then for something else. Q. What amount of money was that? A. $14,000. It wasn't much, but a small amount, anyway it helped me out. Q. You needed it at that time. A. Yes, sir. Q. Do you feel that was proper, do you think you can get them back if you wanted to? A. Yes, sir. Q. You think you could pay back that amount of money and get that

property? A. Yes, sir.".

At the time her testimony was received, Miss Tingle had been found to be mentally incompetent and was represented by Mrs. Harvill, her guardian. "A condition of sanity or insanity once proven to exist is presumed to continue and the burden is on the party claiming a different condition to exist at a later date to prove such change." *Joiner v. Joiner,* 225 Ga. 699 (4) (171 SE2d 297). The trial judge properly charged the jury that if they believed Miss Tingle was competent at the time she gave the aforementioned testimony, they would find in favor of the appellant. The jury found otherwise. There being no proof at the trial that her mental competency had been restored, the verdict was authorized by the evidence, and the trial court did not err in overruling appellant's motion for judgment notwithstanding the verdict.

■ The trial court did not err in overruling appellant's motion for a new trial on the general grounds, as the verdict was supported by the evidence.

■ We have carefully considered appellant's additional enumerations of error and find them to be without merit.

*Judgment affirmed. All the Justices concur.*

ON MOTION FOR REHEARING

Appellant, in his motion for rehearing, argues that Miss Tingle, through her guardian, acquiesced in and ratified the transaction concerning the Georgia property, so as to make that transaction unimpeachable in equity. Since we did not touch on this contention in our original opinion, we take the opportunity to do so now.

Appellant's theory is as follows: (a) that this court, when the case was first before us, established as the law of the case that the Georgia transaction was one of conditional sale, with the option to sell or repurchase, and that this option could be exercised by the guardian (*Tingle v. Tingle,* 227 Ga. 97 (179 SE2d 51)); (b) that after suit was filed, but before the trial had commenced, the guardian notified the appellant that she exercised the option to sell a portion of the Georgia property on behalf of Miss Tingle; and (c) that

the guardian thereby ratified and affirmed the Georgia transaction, precluding Miss Tingle from seeking a cancellation of the instruments involved upon the ground of fraud.

Appellant contends that the guardian notified him in writing of her intention to exercise the option six weeks before the trial. At the trial of the case, the guardian testified as follows:

"Q. Mrs. Harvill, do you as guardian of the property and person of Mary Alice Tingle exercise the option to sell the premises described as Parcels 1 and 2 in the cause known as 1610 Ponce de Leon Avenue, N. E., Atlanta, DeKalb County, Georgia?

"A. Yes."

The guardian's letter and her testimony are said by appellant to amount to a ratification of the Georgia transaction so as to bar any attempt to have it set aside. In support of this argument, appellant cites *Gibson v. Alford,* 161 Ga. 672 (5) (132 SE 442) wherein it is said: "Where a party who is entitled to rescind a contract on ground of fraud or false representations, and who has full knowledge of the material circumstances of the case, freely and advisedly does anything which amounts to a recognition of the transaction, or acts in a manner inconsistent with a repudiation of the contract, such conduct amounts to acquiescence, and, though originally impeachable, the contract becomes unimpeachable in equity."

This argument is without merit.

First, there is no evidence that any affirmative action was taken by Miss Tingle or her guardian which could amount to a ratification of the transaction. Insofar as the record discloses, the guardian did not actually sell any of the property pursuant to the option, but merely stated that it was her intent to do so. This distinguishes the instant case from *Gibson v. Alford,* supra, and other similar cases wherein *some affirmative action actually was done* so as to ratify the contracts there sought to be avoided. A mere statement of intent is not sufficient.

Secondly, the agreement whereby the option to sell was granted, expressly provided that "any such sale shall be contingent upon the approval of (the appellant). . ." Here, there is no evidence that appellant granted approval for the guardian to sell any of the property. To the contrary, the record discloses that appellant sought to have any such sale enjoined.

Furthermore, the affirmative defense of ratification or waiver was not pleaded (*Code Ann.* § 81A-108 (b, c) or made an issue, by the defendant. The record does not disclose that the defendant requested the court to submit the question to the jury.

*Motion for rehearing denied.*